# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PITTSBURGH LOGISTICS SYSTEMS, INC., | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Civil Action No. 18-1548<br>) Judge Nora Barry Fischer<br>) |
| M R E – MONEY RUNNING ENTERPRIZE, LLC (D/B/A MRE TRUCKING); PROGRESSIVE CASUALTY INSURANCE COMPANY; and COVERWALLET, INC., | )<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## **MEMORANDUM OPINION**

This case arises out of a contractual agreement between Plaintiff Pittsburgh Logistics Systems, Inc. ("PLS") and Defendant MRE -- Money Running Enterprize ("MRE") pursuant to which MRE was to ship stainless steel tubes from Houston, Texas to Wellington, Ohio on behalf of PLS' client but the goods were either lost or stolen during transit. (Docket No. 17). Despite being served, MRE did not appear and defend PLS' breach of contract, fraud, negligent misrepresentation, and negligence claims, resulting in the recent entry of a default judgment against MRE in the amount of $88,909.15. (Docket No. 54). The instant disputes surround PLS' remaining claims of fraud, negligent misrepresentation and negligence against Defendants Progressive Casualty Insurance Company ("Progressive") and Coverwallet, Inc, ("Coverwallet"), which are MRE's insurer and insurance agent. (*Id*.). In short, PLS reimbursed its client for the loss but its claim against MRE's insurance policy with Progressive was denied because the policy was cancelled due to non-payment by MRE. (*Id*.). Presently before the Court are contested motions to dismiss filed by Progressive and Coverwallet and a motion by PLS seeking leave to file a Second Amended Complaint reinstating a statutory bad faith claim against these Defendants.

1

(Docket Nos. 19; 21; 23). The motions have been exhaustively briefed and the Court heard oral argument, making them ripe for disposition. (Docket Nos. 19-25; 27; 30-31; 36; 40; 42; 46-47). After careful consideration of all of the parties' arguments, and for the following reasons, Progressive and Coverwallet's motions to dismiss [19], [21] will be granted, and PLS' motion to amend [23] will be denied.

As the Court writes primarily for the parties, it dispenses with a lengthy recitation of the facts and only briefly references the well-established standards governing motions to dismiss under Rule 12(b)(6) and motions to amend under Rule 15(a), which are more fully set forth in other decisions by this Court. *See e.g., Battle Born Munitions, Inc. v. Dick's Sporting Goods, Inc.*, Civ. A. No. 18-1418, 2019 WL 1978429, at *4 (W.D. Pa. May 3, 2019). To this end, when reviewing a motion to dismiss under Rule 12(b)(6), the Court must "accept all factual allegations in the complaint as true, [and] construe the complaint in the light most favorable to the plaintiff," *see Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008), however, a complaint must be dismissed if it does not allege "enough facts to state a claim for relief that is plausible on its face," *see Bell Atlantic v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Leave to amend may be denied under Rule 15 if the proposed amended complaint would fail to state a plausible claim for relief. *See Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) ("Futility" in this context "means that the complaint, as amended, would fail to state a claim ...").

In this Court's estimation, PLS has failed to state plausible claims for relief against Progressive and Coverwallet in both the operative First Amended Complaint and its proposed Second Amended Complaint, making this case subject to dismissal without leave to amend. *See Twombly*, 550 U.S. at 570; *see also Shane*, 213 F.3d at 115. The Court reaches these conclusions for several reasons.

First, neither Progressive nor Coverwallet have any relationship with PLS, (contractual or otherwise), and it is settled law that injured parties generally have no direct cause of action against a tortfeasor's insurer or insurance agent to recover a loss purportedly covered by an insurance policy, as PLS is attempting here. *See e.g., Apalucci v. Agora Syndicate,* 145 F.3d 630, 633 (3d Cir. 1998) ("It is well-settled that under Pennsylvania law, an injured party has no right to directly sue the insurer of an alleged tortfeasor unless a provision of the policy or a statute create such a right."). Rather, the proper course of action is to bring claims against the insured tortfeasor, as PLS has done here by asserting various causes of action and obtaining a default judgment against MRE. *Id.*

Second, "[t]o sustain a claim for negligence under Pennsylvania law, Plaintiff must show that: (1) Defendants owed a duty to Plaintiff; (2) Defendants breached that duty; and (3) that breach was the proximate cause of Plaintiff's injuries." *Chandler v. L'Oreal USA, Inc.*, 340 F. Supp. 3d 551, 562 (W.D. Pa. 2018), *aff'd sub nom. Chandler v. L'Oreal USA, Inc*, No. 18-3277, 2019 WL 2452331 (3d Cir. June 12, 2019). PLS' allegations of negligence against Progressive and Coverwallet fail to state plausible claims for relief because the federal regulations cited by PLS, i.e., 49 C.F.R. §§ 387.15 and 387.313(d), do not establish that either entity owed a duty to PLS or other members of the public regarding the cancellation of MRE's insurance policy; hence no such duties were breached nor was there any resulting harm to PLS. *See id.* To the contrary, the cited regulations pertain to MRE's responsibilities as an interstate motor carrier to notify the Department of Transportation of its financial responsibility to protect the general public from losses caused by its interstate activities and require certain endorsements to be maintained as part of insurance policies if it provides proof of financial responsibility through a certificate of insurance. *See e.g., McGirt v. Gulf. Ins. Co.,* 207 F. App'x 305, 307-08 (4th Cir. 2006) (explaining regulations).

Relevant here, an MCS-90 endorsement essentially creates a suretyship by the insurer to protect the public from certain losses not covered by the insured's policy but the endorsement is not triggered until a final judgment is reached against the tortfeasor and a claim is made against the endorsement. *See e.g. Canal Ins. Co. v. Underwriters at Lloyd's London*, 435 F.3d 431, 442 (3d Cir. 2006) ("an insurer's responsibilities under the endorsement are triggered when the policy to which it is attached does not provide coverage to the insured. The peculiar nature of the MCS–90 endorsement grants the judgment creditor the right to demand payment directly from the insurer, and simultaneously grants the insurer the right to demand reimbursement from the insured.").

Further, cases have recognized that while the insurer is required to comply with the notice regulations and advise the Department of Transportation when a policy is cancelled, a failure to do so does not affect the policy terms, but could result in the MCS-90 endorsement being extended until compliance with the regulations is demonstrated. *See e.g. Nat'l Indep. Truckers Ins. Co. v. Gadway*, 860 F. Supp. 2d 946, 955 (D. Neb. 2012) ("The Court concludes that as to injured members of the public, the MCS–90 endorsement attached to the policy remains in effect at least until the notice requirement of 49 C.F.R. § 387.313(d) has been satisfied."). In its various pleadings, all of which were submitted before the default judgment was entered, PLS has not referenced any policy endorsement nor made any claim as to same. (Docket Nos. 17; 23-1). Regardless, PLS cannot maintain a direct claim of negligence against Progressive or Coverwallet based on an alleged failure to comply with the federal notice regulations because those entities did not owe any duty to PLS as to same. *See id.* Thus, PLS' negligence claims are subject to dismissal.

Third, PLS' fraud and negligent misrepresentation claims similarly fail due to its inability to sufficiently plead all of the essential elements of these claims. "In Pennsylvania, negligent misrepresentation requires proof of: (1) a misrepresentation of a material fact; (2) made under

circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and; (4) which results in injury to a party acting in justifiable reliance on the misrepresentation." *Fleming Steel Co. v. Jacobs Eng'g Grp., Inc.*, 373 F. Supp. 3d 567, 595 (W.D. Pa. 2019) (quotation omitted)). "To demonstrate fraud, the plaintiff must establish the following elements: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Waldschmidt v. NVR, Inc.*, No. CV 18-1372, 2018 WL 6433910, at *8 (W.D. Pa. Dec. 7, 2018) (quotation omitted). Even if PLS had sufficiently averred that these entities misrepresented that the policy had been cancelled, which it has not, PLS did not justifiably rely on same as it proceeded to file this lawsuit against MRE and obtained a default judgment in the amount of $88,909.15. *See id.* Therefore, PLS' fraud and negligent misrepresentation claims are dismissed.

Fourth, PLS' proposed amendment seeking to reinstate its statutory bad faith claim against Progressive and Coverwallet is also without merit. Pennsylvania precedent is clear that only the insured has a right to bring a bad faith claim against its insurer. *See e.g., LeBoon v. Zurich Am. Ins. Co.*, 673 F. App'x 173, 176 (3d Cir. 2016) ("In that LeBoon plainly is not an Insured under the liability policy, he failed to state a plausible claim for relief on his allegations of bad faith."); *Grudkowski v. Foremost Ins. Co.*, 556 F. App'x 165, 170 (3d Cir. 2014) (quoting *Toy v. Metro. Life Ins. Co.*, 593 Pa. 20, 928 A.2d 186, 199 (2007) ("The term "bad faith" in section 8371 concerns "the duty of good faith and fair dealing in the parties' contract and the manner by which an insurer discharged its obligations of defense and indemnification in the third-party claim context or its obligation to pay for a loss in the first party claim context.")); *Vella v. State Farm Mut. Auto. Ins.*

*Co.*, No. 1:17-CV-1900, 2018 WL 1907335, at *2 (M.D. Pa. Apr. 23, 2018) ("In Pennsylvania, it is well-settled law that a third-party claimant cannot bring a cause of action for bad faith against an alleged tortfeasor's liability insurer.") (citations omitted). PLS is not the insured and any statutory bad faith claim is rightly disposed of under Rule 12(b)(6) for failure to state a plausible claim for relief.

Finally, PLS' motion for leave to amend must be denied as the proposed amendments are futile, for the reasons set forth above. *Shane*, 213 F.3d at 115. In addition, PLS has been provided with numerous opportunities to demonstrate that this case should move beyond the pleading stage, i.e., it has filed three separate versions of its complaint, submitted numerous briefs and presented oral argument, but none of its allegations nor any of its arguments have demonstrated to this Court that it has any plausible claims against Progressive or Coverwallet for negligence, negligent misrepresentation, fraud or statutory bad faith. (*See* Docket Nos. 1-2; 17; 23-2). Accordingly, PLS' motion seeking leave to amend is denied.

For all of these reasons, Progressive and Coverwallet's motions to dismiss [19], [21] are granted and PLS' motion to amend [23] is denied. An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
Senior U.S. District Judge

Dated: July 25, 2019

cc/ecf: All counsel of record.